# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

BLAIR HAYS,

    Plaintiff,

    v.

J. GASTELO, et al.,

    Defendants.

No. 2:19-CV-0939-DMC-P

ORDER

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is Plaintiff's complaint (ECF No. 1). Plaintiff alleges violations to his First Amendment right to freely exercise his religion.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the

complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following defendants: (1) J. Gastelo, the prison warden; (2) J. Bonnifield, Community Resource Manager; (3) J. Stout, a correctional officer; (4) John Doe One, a correctional officer; (5) John Doe Two, a correctional officer; (6) John Doe Three, a correctional officer; and (7) Jane Doe; a food manager. The allegations outlined in the complaint may be summarized as follows:

In 2013, while imprisoned at Calipatria State Prison (Calipatria), Plaintiff received a Religious Meat Alternative (RMA) Identification Card permitting him to receive special meals based on his religious needs. In July 2018, Plaintiff transferred to the California Men's Colony (CMC), but the prison refused to recognize his Calipatria RMA Identification Card. Plaintiff alleges Defendants Stout, John Does One, Two, and Three, refused to serve him religious meals from July 2018 to December 2018 because he was not on the CMC's Institutional Approved Dietary List (IADL), despite his Calipatria RMA Identification Card. Plaintiff did not find out until December 2018 that an appeal might be necessary to gain placement on the IADL. On December 6, 2018, Plaintiff filed an appeal and was placed on the IADL that day.

## II. DISCUSSION

Plaintiff alleges Defendants violated his First Amendment right to exercise his religion in the following ways: (1) failing to honor the Calipatria RMA Identification Card; (2) requiring new arrival inmates wait thirty days to be placed on the IADL; (3) failing to notify Plaintiff of the thirty-day waiting period; and (4) exceeding the thirty-day waiting period.

For reasons discussed below, Plaintiff fails to state a cognizable claim against Defendants Stout, John Does, and Jane Doe. The court finds Plaintiff states valid First Amendment claims against Defendants Gastelo and Bonnifield for unconstitutional policies but insufficiently alleges any further claims against them.

The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974). Thus, for example, prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion. See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987). In addition, prison officials are required to provide prisoners facilities where they can worship and access to clergy or spiritual leaders. See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970). Officials are not, however, required to supply clergy at state expense. See id. Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts. See Cruz v. Beto, 405 U.S. 319, 322 (1972).

However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives. See McElyea, 833 F.2d at 197. For instance, under the First Amendment, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish inmates with a pork-free diet instead of a completely kosher diet. See Ward v. Walsh, 1 F.3d 873, 877-79 (9th Cir. 1993). Similarly, prison officials have a legitimate penological interest in getting inmates to their work and educational assignments. See Mayweathers v. Newland, 258 F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

While free exercise of religion claims originally arose under the First Amendment, Congress has enacted various statutes in an effort to provide prisoners with heightened religious protection. See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005). Prior to these congressional efforts, prison free exercise claims were analyzed under the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349. The

first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA) of 1993. However, the Supreme Court invalidated that act and restored the "reasonableness test." See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).

Congress then enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA) in 2000 ". . . in response to the constitutional flaws with RFRA identified in City of Boerne." Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir. 2006). Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on religious exercise unless there exists (1) a compelling governmental interest and (2) the burden at issue is the least restrictive means of satisfying that interest. See id. at 986. RLUIPA has been upheld by the Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates exceptional government-created burdens on private religious exercise.'" Warsoldier, 418 F.3d at 994 (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)). Congress achieved this goal by replacing the "reasonableness test" articulated in Turner with the "compelling government interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a). See id.

It is not clear whether a prisoner must specifically raise RLUIPA in order to have his claim analyzed under the statute's heightened standard. In Alvarez v. Hill, the Ninth Circuit held that, if a complaint contains "factual allegations establishing a 'plausible' entitlement to relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure." 518 F.3d 1152, 1157 (9th Cir. 2008); but see Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under the First Amendment only). Therefore, it is possible for a prisoner's complaint to raise both a First Amendment claim and RLUIPA claim based on the same factual allegations. In other words, even if the plaintiff does not specifically invoke the heightened protections of RLUIPA, he may

nonetheless be entitled to them. Under <u>Henderson</u>, however, the plaintiff's claim may be limited to the less stringent <u>Turner</u> "reasonableness test" if the plaintiff specifically brings the claim under the First Amendment only.

Under both the First Amendment and RLUIPA, the prisoner bears the initial burden of establishing that the defendants substantially burdened the practice of plaintiff's religion by preventing him from engaging in conduct mandated by his faith. See <u>Freeman v. Arpaio</u>, 125 F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also <u>Warsoldier</u>, 418 F.3d at 994-95 (analyzing claim under RLUIPA). While RLUIPA does not define what constitutes a "substantial burden," pre-RLUIPA cases are instructive. See <u>id.</u> at 995 (discussing cases defining "substantial burden" in the First Amendment context). To show a substantial burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct "... burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates." <u>Graham v. Commissioner</u>, 822 F.2d 844, 850-51 (9th Cir. 1987). The burden must be more than a mere inconvenience. See <u>id.</u> at 851. In the context of claims based on religious diets, a plaintiff must prove that prison officials refused to provide a diet which satisfies his religious dietary laws or that the available prison menu prevented him from adhering to the religious dietary laws mandated by his faith. See <u>Bryant v. Gomez</u>, 46 F.3d 948, 949 (9th Cir. 1995).

Under the First Amendment "reasonableness test," where the inmate shows a substantial burden the prison regulation or restriction at issue is nonetheless valid if it is reasonably related to a legitimate penological interest. See <u>Shakur v. Schriro</u>, 514 F.3d 878, 884 (9th Cir. 2008) (citing <u>Turner</u>, 482 U.S. at 89). In applying this test, the court must weight four factors: (1) whether there is a rational connection between the regulation or restriction and the government interest put forward to justify it; (2) whether there are available alternative means of exercising the right; (3) whether accommodation of the asserted religious right will have a detrimental impact on prison guards, other inmates, or the allocation of limited prison resources; and (4) whether there exist ready alternatives to the regulation or restriction. See <u>id.</u>; see also

Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

Under RLUIPA, the government is required to ". . . meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest.'" Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95. Prison security is an example of a compelling governmental interest. See Green, 513 F.3d at 989 (citing Cutter, 125 S.Ct. at 2113 n.13). In establishing that the regulation or restriction is the least restrictive means to achieve a compelling governmental interest, prison officials must show that they actually considered and rejected the efficacy of less restrictive means before adopting the challenged practice. See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

### A. Claims Against Unconstitutional Policies

Turning first to the constitutionality of refusing to honor RMA Identification Cards from other prisons and implementing a thirty-day waiting period before placing new arrivals on the IADL, the court finds Plaintiff only states cognizable claims against Defendants Gastelo and Bonnifield.

#### 1. Defendants J. Stout, John Does, and Jane Doe

Here, Plaintiff's claim is insufficient for service. Plaintiff challenges the constitutionality of prison policies but alleges no facts to establish Defendants Stout and John Does held any supervisory or administrative roles or participated in the promulgation of these policies. Thus, Plaintiff has inadequately established their liability for the allegedly unconstitutional prison policies.

To the extent Plaintiff alleges a First Amendment violation against Defendants for following the challenged policies, he also has not stated a cognizable claim. As alleged, Defendants' conduct aligned with prison policy since Plaintiff was not on the CMC's IADL at the time of the alleged violations. When a defendant follows a policy over which he has no control or has not promulgated, he may not be the cause of any constitutional violation. See Estate of Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir. 1999). Furthermore, Plaintiff has not

suggested Defendants had the discretion or ability to deviate from the requirements of the regulations and provide him a religious diet in the absence of any effort on his part to secure a new diet card. Since Plaintiff fails to demonstrate Defendants Stout and John Does had any control over the policies at issue or the ability to deviate from them, Defendants are not liable for the alleged constitutional violation. Thus, Plaintiff has failed to state a cognizable claim against Defendants Stout and John Does.

Turning to Defendant Jane Doe, Plaintiff's complaint is again insufficient. Plaintiff does not demonstrate Jane Doe controlled or promulgated the policies in question. Instead, Plaintiff only alleges she failed to ensure new arrivals with RMA Identification Cards from other prisons received religious meals. This claim parallels Plaintiff's claim against Defendants Stout and John Does and is similarly not cognizable. Since Plaintiff has not alleged Defendant Jane Doe's responsibility for these policies or an ability to deviate from them, she is not the cause of his constitutional violations. Thus, the complaint does not allege a valid claim.

2. Defendants J. Gastelo and J. Bonnifield

Unlike Defendants Stout and John Does, Defendants Gastelo and Bonnifield held supervisory roles within the prison. Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

///

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

Here, Plaintiff sufficiently alleges Defendants Gastelo and Bonnifield, as warden and Community Resource Manager, respectively, promulgated the allegedly unconstitutional policies and failed to implement adequate programs for new inmates seeking religious meals. The complaint establishes these policies prevented Plaintiff from accessing a religious diet for six months and substantially burdened the practice of his religion by preventing him from upholding obligatory tenants of the Islamic faith. Thus, Plaintiff has adequately alleged his claim against Defendants Gastelo and Bonnifield.

### B. Failing to Advise of the Thirty-Day Wait Period

Plaintiff alleges all named Defendants violated his free exercise right by failing to notify him of the thirty-day waiting period. However, Plaintiff fails to state a cognizable claim. No facts connect this vague allegation to any of the named Defendants. The complaint does not allege an unconstitutional policy in place refusing to inform inmates of prison procedure. Nor does Plaintiff allege Defendants directed others to exclude Plaintiff from this knowledge. Furthermore, Plaintiff fails to allege how his ignorance of the thirty-day waiting period substantially burdened the practice of his religion. Without this information, the court fails to distinguish this claim from the burden imposed by the policy itself. Plaintiff will be given leave to amend.

### C. Exceeding the Thirty-Day Wait Period

Plaintiff alleges Defendants violated his First Amendment right by exceeding the thirty-day waiting period for placement on the IADL. However, Plaintiff again does not state a valid claim. The complaint does not establish which, if any, Defendants are responsible for

placing or failing to place new arrivals on the IADL. Without these allegations, the court cannot infer any Defendant's liability for Plaintiff's six-month waiting period. Thus, Plaintiff's complaint is insufficient for service. Plaintiff's amended complaint must connect specific Defendants and Plaintiff's lack of placement on the IADL within thirty-days.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated: June 24, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE